TOPLITZ *v.* HEDDEN, Collector.

*(Circuit Court, S. D. New York.   January 12, 1888.)*

CUSTOMS DUTIES—CLASSIFICATION—WOOL COVERINGS FOR THE HEAD.
  Articles made of wool, knit on frames, imported from Scotland, and used for a covering for the head, are properly assessed for duty under tariff act par. 363, which reads: "Flannels, blankets, hats of wool, knit goods, and all goods made on knitting frames," etc., and not under paragraph 400, which provides for duty on "bonnets, hats, and hoods for men, women, and children, composed of chip, grass, palm leaf," etc., as the word "bonnet" in the statute is not sufficiently broad, nor such peculiar, technical trade-meaning coupled with it as to cover these goods.

At Law.   Action to recover back customs duties.
*Chas. Curie,* for plaintiff.
*Stephen A. Walker,* U. S. Dist. Atty., and *W. Wickham Smith,* Asst. U. S. Dist. Atty., for defendant.

LACOMBE, J., (*orally.*)   The articles in this case are made of wool, are knit on frames, are used for a covering for the head, and come from Scotland, and they have been assessed for duty by the collector under paragraph 363 of the tariff act, which reads: "Flannels, blankets, hats of wool, knit goods, and all goods made on knitting frames, balmorals, woolen and worsted yarns," etc.

It is claimed by the plaintiff that they are properly assessable under paragraph 400, as follows: "Bonnets, hats, and hoods for men, women, and children, composed of chip, grass, palm leaf, willow, or straw, or any other vegetable substance, hair, whale bone, or other material not specially enumerated or provided for in this act." The words used in these tariff statutes, when not technical, either as having a special sense by commercial usage, or as having a scientific meaning different from the popular meaning,—in other words, when they are words of common speech,—are within the judicial knowledge, and their interpretation is a matter of law. The plaintiff contends that the word "bonnets" in this phrase, "bonnets, hats, and hoods for men, women, and children," or, as he further qualifies the words, "bonnets for men" is to be taken in its ordinary acceptation, and not as a technical word, or as a commercial

term with some special meaning attached to it in the usages of trade and commerce. He further claims that such general, common, every-day meaning covers goods such as are the subject of this suit. They are what have been called by some of the witnesses Scotch caps; they are a head-covering in use in Scotland, and imported from there to this country, and I infer that they have been, in their present shape, in use in Scotland for many years.

The first thing, then, to be determined is the meaning of the word "bonnet." What is its ordinary and received acceptation in the English language, as used in this country, where congress legislates? What is its popular and received import? What is its common, every day meaning? Such, under the decisions, is the question which is to be answered. Now, it needed not a reference to the quotations which were read here on this trial to satisfy us all that heretofore, at the time when the Bible was translated, at the time when Shakspeare wrote his plays, at the time that Walter Scott wrote his novels, and to-day, even, in novels, narratives, or poems descriptive of Scotch life,—the word "bonnet" was and is used as meaning and including a cover for the head. Is it in use in that sense, however, now,—by *now* I mean March 3, 1883,—in this country. Several lexicons and cyclopædias published in England and in Scotland have been referred to; but I suppose there is no better authority upon English language to-day, so far as it goes—for the first volume only is out—than the English dictionary published under the auspices of the Philological Society, and edited by Mr. Murray. That dictionary, under the definition of "bonnet," describes it as a "head dress of men and boys, usually soft, and distinguished from the hat by want of a brim; in England superseded in common use apparently before 1700 by cap, but retained in Scotland; hence sometimes treated as equivalent to a Scotch cap." That seems to be the best English authority on the use of the term. But it is not its use in England which concerns us here. What is the meaning of the word "bonnet" in this country? What was its meaning on March 3, 1883? The lexicons are, of course, the first authority to be consulted upon such a question. But I do not understand, under the decisions, that they are the sole fountain of authority, and that the court, in deciding the question, is restricted to the precise definition used in any particular dictionary. Two dictionaries are recognized as the standards for this country,—Webster and Worcester. The edition of Worcester which has been put in evidence gives, as the first definition, "'a cap or hat worn by men,'" with a quotation from Shakspeare in illustration, coupled, however, with a sign indicating that it was obsolete at the time that edition of the dictionary was published, which was in the year 1860. Webster's dictionary, edition of 1865, does not contain any express statement that the word has become obsolete when used in that sense; but the phraseology of the first definition which it gives is such as not necessarily to be in conflict with the statement in Worcester. It is: "A cap or covering for the head, in common use before the introduction of hats, and still used by the Scotch." Whether or not that particular paragraph means that the cap or covering was in

common use, or that the name of bonnet in that sense was in common use, is not entirely clear,—grammatically clear,—upon the face of the paragraph. If there is no conflict between these two authorities, then the statement in Worcester may be taken as conclusive. If, however, there is a conflict between them, then the court must determine this question from its own knowledge as to the use of the word.

Three witnesses—and I do not refer to their testimony as enlightening the court upon the meaning of the word, nor do I predicate my ruling upon their testimony, but I refer to it in illustration merely—three witnesses gave suggestive testimony upon this point. Mr. Dunlap sells a great many of these caps,—imports and sells them,—and buys them also, I presume, from manufacturers here. He sells them on the call of his customers as caps, except that Scotchmen have called and asked for a bonnet. Mr. Russell, himself a Scotchman, knows what a bonnet is; but though he has been in business here long, and sold many of them, he testifies that no one here has asked for these goods, asking for them by the name of bonnet. The other, a most important witness on that point, is the plaintiff himself. No one arriving in a strange city anywhere in this country, and wishing to purchase a Scotch cap, who should look over a business directory to find a shop at which to buy it, would go to a person who advertised himself as a dealer in bonnets. The plaintiff seems to have recognized that fact fully, for, upon his sign, he describes himself as an importer of Scotch caps.

I am, therefore, of the opinion that the word "bonnet" is not in this statute sufficiently broad to cover the goods the subject of this suit, unless it is made so by having affixed to it at the time congress passed this act some peculiar, technical, trade meaning, which coupled it, in the minds of the legislators, with these particular goods, or goods similar to them. Of this there is no proof, and I shall, therefore, deny the plaintiff's motion for a verdict, and shall direct a verdict for the defendant.